MEMORANDUM OPINION

 

No. 04-09-00280-CR

 

John SOTO,

Appellant

 

v.

 

The STATE of
Texas,

Appellee

 

From the 175th
Judicial District Court, Bexar County, Texas

Trial Court No. 2007-CR-10196

Honorable Pat Priest,
Judge Presiding[1]

 

Opinion by:   Marialyn Barnard, Justice

 

Sitting:                     Catherine Stone, Chief Justice

                     Phylis
J. Speedlin, Justice

                     Marialyn
Barnard, Justice

 

Delivered and
Filed:  October 29, 2010

 

AFFIRMED

 

A jury convicted John
Soto of eleven counts of aggravated sexual assault of a child.  Pursuant to
Soto’s election, the jury assessed punishment at confinement for ninety-nine
years on nine counts, twenty years on another count, and twenty-five years on
the remaining count.  The trial court ordered the sentences to run
concurrently.  On appeal, Soto contends the trial court erred by: (1) denying his
motion to suppress; (2) denying his motion to quash the indictment; (3) excluding
certain evidence; (4) overruling his objection to the testimony of Dr. Nancy
Kellogg concerning diagnostic impressions and normal sexual examinations; and
(6) overruling his objection requesting complainant’s mother’s testimony be
stricken from the record based on a violation of rule 614 of the Texas Rules of
Evidence.  

Background

Soto has not challenged
the sufficiency of the evidence to support his conviction.  Accordingly, a
detailed rendition of the facts is unnecessary, and we provide only the factual
background necessary for context.  

Complainant, C.L., first
came into contact with Soto when he was a twelve-year-old fifth grader. 
According to C.L., Soto approached him one day after school and asked if C.L.
would like to play on Soto’s summer football team.  C.L. stated Soto offered
him $50.00 in exchange for his agreement to play on the team.  C.L., with his
parents’ permission, agreed.  Over the course of the summer, Soto gave C.L.
rides to and from practices and games, and the two developed a relationship.  C.L.
testified the relationship ultimately changed, beginning when Soto put his hand
on C.L.’s leg during a ride home.   

C.L. testified the first
incident of sexual abuse occurred after Soto took C.L. dirt biking.  When the
two returned to Soto’s house, C.L. went inside to shower.  After showering,
C.L. claims Soto then sexually assaulted him by performing oral sex on him. 
Afterwards, according to C.L., Soto apologized and drove C.L. home.  C.L.
recalled that during the summer more than five such incidents occurred in which
Soto performed oral sex on C.L.  C.L. testified things escalated and ultimately
C.L. performed oral sex on Soto, and Soto anally assaulted C.L.  C.L. stated
that during the time he was in contact with Soto, Soto assaulted him anally at
least twelve times–sometimes at Soto’s house, and sometimes at C.L.’s house. 
C.L. stated that when he attempted to stop the sexual assaults, Soto would beat
C.L. with his fists and threaten the safety of C.L.’s family until C.L.
complied.  C.L. also testified Soto forced C.L. to watch pornographic videos
depicting men and women having anal sex.  C.L. stated he sent nude photographs
of himself to Soto.  

According to C.L., the
incidents ceased when Gabrielle Knight, C.L.’s mother, came home unexpectedly,
interrupting Soto’s sexual assault of C.L.  Knight recalled Soto rushing into a
nearby bathroom before she could enter the room.  According to Knight, Soto
apologized and claimed he was not feeling well.  Knight was suspicious, so when
Soto emerged from the bathroom, Knight informed Soto that he was not allowed in
her house unless she was there.  

Knight testified other
events had aroused her suspicions as well.  On one occasion, she discovered a
threatening text message sent to C.L. from “Paul.”[2]  Concerned, Knight took C.L.’s laptop
and phone[3],
which were given to C.L. by Soto, to the police and requested they look into
the matter.  Although no specific allegations were made at this time,
subsequent forensic analysis of the phone and computer uncovered data that concerned
Detective Lisa Miller.  Immediately thereafter, Detective Miller subpoenaed the
cell phone records of the phone formerly in C.L.’s possession as well as Soto’s
phone records.  These records indicated that from February 12 to April 12,
2006, more than 800 phone calls were exchanged between C.L. and Soto.[4]  Detective Miller also subpoenaed
AT&T Internet records to determine who owned the e-mail address
“turtle3379@sbcglobal.net.”  This inquiry revealed Soto was the account holder
of “turtle3379” as well as eighteen other e-mail accounts.   

After three unproductive
interview attempts with C.L., Detective Miller contacted FBI Special Agent Rex
Miller, and requested he interview C.L at C.L.’s home.  Agent Miller was able
to obtain information from C.L. that gave Detective Miller sufficient probable
cause for a search warrant for Soto’s home and a warrant for his arrest.  Soto
was arrested and ultimately convicted of several counts of aggravated sexual
assault of a child.  He then perfected this appeal.

Analysis

Motion
to Suppress

           In his first point of error, Soto
contends the trial court erred in denying his motion to suppress.  We
disagree.  

A trial court’s ruling on
a motion to suppress is reviewed under a bifurcated standard of review.  Amador
v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  An appellate court does not conduct its
own factual review; rather, deference is given to the trial judge as the sole
trier of fact, judge of the witnesses’ credibility, and the respective weight to
be given to their testimony.  Weide v. State, 214 S.W.3d 17, 24-25 (Tex.
Crim. App. 2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000),
modified on other grounds by State v. Cullen, 195 S.W.3d 696 (Tex. Crim.
App. 2006).  Because the trial court is in the best position to observe the
witnesses’ appearance and demeanor, the trial court is the sole judge of the
truthfulness of the witnesses’ testimony.  See Ross, 32 S.W.3d at 855. 
Although great deference is given to the trial court’s evaluation of historical
facts, we review the court’s application of the law pertaining to those facts
under a de novo standard.  Amador, 221 S.W.3d at 673.  All evidence in a
trial court’s motion to suppress ruling is viewed “in the light most favorable
to the trial court’s ruling.”  State v. Iduarte, 268 S.W.3d 544, 548
(Tex. Crim. App. 2008); State v. Kelly, 204 S.W.3d 808, 818-19 (Tex.
Crim. App. 2006).  And, a trial court’s ruling will be upheld so long as
support exists in the record and the theory of law applied to the facts is
correct.  Iduarte, 268 S.W.3d at 548.  

           Soto claims the trial court erred in
denying his motion to suppress because Detective Miller’s affidavit, which supported
the search warrant, contained deliberate falsehoods or statements made in
reckless disregard of the truth.  Soto specifically challenges Paragraphs D and
F of the affidavit.  Soto first argues that the statements in Paragraph D of the
affidavit, which allege over 800 phone calls between Soto and C.L. between
February 12 and April 12, 2006, were made to deliberately mislead the
magistrate into believing each listed phone call in the records was an actual
voice conversation, rather than a series of daily text messages.  Soto contends
the affiant’s statements ignored the possibility of innocent one-word text
message exchanges, and created a false appearance of an improper relationship
between an adult and child.  

           Soto also contends Paragraph F, which contained
C.L.’s allegation that he sent nude photographs of himself to Soto at Soto’s
request, was false, and included in the affidavit to induce the magistrate to
find probable cause to issue the warrant.  Soto supports his contention by
showing the allegation was unsubstantiated after a search of Soto’s home.  

Soto contends that but
for Paragraphs D and F, there would not have been sufficient probable cause for
a warrant, and the trial court erred in not striking those paragraphs and
granting his motion to suppress.  

           Under Franks v. Delaware, 

 

[W]here the defendant makes a
substantial preliminary showing that a false statement knowingly and
intentionally, or with reckless disregard for the truth, was included by the affiant in
the warrant affidavit, and if the allegedly false statement is necessary to the
finding of probable cause, the Fourth Amendment requires that a hearing be held
at the defendant’s request.  In the event that at that hearing the allegation
of perjury or reckless disregard is established by the defendant by a
preponderance of the evidence, and, with the affidavit’s false material set to
one side, the affidavit’s remaining content is insufficient to establish
probable cause, the search warrant must be voided and the fruits of the search
excluded to the same extent as if probable cause was lacking on the face of the
affidavit.  

 

438 U.S. 154, 155-56 (1978); see Harris v.
State, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007) (adopting Franks
standard).  The Texas Court of Criminal
Appeals has made it clear that to be entitled to a Franks
hearing a defendant must:

(1) allege deliberate falsehood or reckless
disregard for the truth by the affiant, specifically pointing out the portion
of the affidavit claimed to be false; (2) accompany these allegations with an
offer of proof stating the supporting reasons; and (3) show that when the
portion of the affidavit alleged to be false is excised from the affidavit, the
remaining content is insufficient to support issuance of the warrant. 

 

Harris,
227
S.W.3d at 83 (citing Cates v. State, 120 S.W.3d 352, 356 (Tex. Crim. App.
2003) (quoting Ramsey v. State, 579 S.W.2d 920, 922-23 (Tex. Crim.
App. 1979)).  Apparently deciding Soto made the initial showing
required by Franks and Harris, the trial court held a hearing
based on Soto’s allegations.  During this hearing, Soto questioned Detective
Miller regarding the information included in her affidavit.  According to
Detective Miller, information pertaining to the “more than 800 calls” between Soto
and C.L. was derived from the cell phone records.  She denied her statements
relating to the calls were erroneous or false.  Soto’s argument challenging the
failure of the affiant to differentiate between voice calls and text messages
was covered at the hearing during the examination of Detective Miller. 
Detective Miller explained that “[n]ormally the text messages will show up as,
like, a one-minute call.”  The alleged innocent nature of the exchanges between
Soto and C.L. was suggested by Soto at the hearing, but he did not support his
allegations with any evidence.  Even if she failed to consider the potential
innocent nature of the eight hundred plus exchanges, this amounted to nothing
more than negligence on the part of Detective Miller, and “[a]llegations of
negligence or innocent mistake are insufficient” to warrant striking portions
of an affidavit.  Franks, 438 U.S. at 173.  

As to the statements
contained in Paragraph F of the affidavit and Soto’s claim that the statements therein
were included to deliberately mislead the magistrate into believing that this
picture would be found at Soto’s home or on his computer, we disagree with
Soto’s contention that the police should have first verified if they had
possession of a photograph by examining the contents of C.L.’s computer before
including the statement in the affidavit.  We also reject his contention that the
results of this search should have been included in the affidavit because it
was relevant to the implication that Soto possessed child pornography.  According
to Soto, because the allegation was “completely unsubstantiated,” this
statement was meant to mislead the magistrate into believing probable cause
existed.  

According to Franks,
the Fourth Amendment’s requirement for a truthful showing of probable cause
does not mean: 

. . .
“[T]ruthful” in the sense that every fact recited in the warrant affidavit is
necessarily correct, for probable cause may be founded upon hearsay and upon
information received from informants, as well as upon information within the
affiant's own knowledge that sometimes must be garnered hastily.  But surely it
is to be “truthful” in the sense that the information put forth is believed or
appropriately accepted by the affiant as true. 

 

Franks, 438 U.S. at 164-65; see
Janecka v. State, 937 S.W.2d 456, 462 (Tex. Crim. App. 1996). 
Detective Miller’s statements were properly included in the affidavit because she
believed and accepted the information set forth in the affidavit as true.  See
id.  

We agree with Soto that Franks
requires that any information, which is shown by a preponderance of the
evidence to be false or deliberately misleading, be struck from the search
warrant affidavit.  See Franks, 438 U.S. at 156; Harris,
227 S.W.3d at 85.  And, a warrant will be deemed void only if the remaining
information contained in the affidavit is insufficient to establish probable
cause.  Franks, 438 U.S. at 156; Harris, 227 S.W.3d at
85.  However, we hold the trial court did not abuse its discretion by refusing
to strike the complained of statements from the affidavit.  The trial court
determined that the information contained in the affidavit was not made in
“reckless disregard for the truth that is mandated by Franks versus Delaware.” 
Because the statements were properly part of the affidavit, we hold the motion
to suppress was properly denied.   

Even if we assume
Paragraphs D and F should have been struck from the affidavit, we hold the
affidavit would still have supported the issuance of the search warrant.  Detective
Miller’s affidavit states AT&T Internet records established Soto was the
accountholder of e-mail address “turtle3379@sbcglobal.net.”  This was
suspicious given that C.L. claimed Soto introduced him to a girl named “Sue”
who apparently used the screen name “turtle3379.”  C.L. also told the
authorities Soto added “Sue” to his friend list so they could begin
communicating on Yahoo Instant Messenger.  Forensic analysis of C.L.’s
computer, which was given to him by Soto, revealed conversations between C.L.’s,
“undecided1992,” and “turtle3379,” in which the two discussed C.L.’s romantic
relationship and sexual activity with an unnamed male.  

Another paragraph in the
affidavit recapitulates the major points of C.L.’s interview with FBI special
agents where he described several instances of forced sexual conduct with Soto. 
C.L. also stated, and the affidavit relayed, Soto threatened C.L.’s life if C.L.
ever told anyone about the sexual contact.  In one instance, Soto allegedly
placed a knife to C.L.’s neck while making such a threat.  

The information regarding
the e-mail conversations and that obtained from C.L.’s interview with federal
authorities was sufficient to give rise to probable cause to search Soto’s
home.  Therefore, even excluding Paragraphs D and F from the affidavit, we hold
there was sufficient evidence to support the warrant.  

Motion
to Quash

Soto next contends the
trial court erred by overruling his motion to quash the indictment.  Soto was
indicted on November 14, 2007, on nineteen counts of aggravated sexual assault
of a child, which allegedly took place between June 15, 2005 and March 18,
2006.[5] 
Soto filed a motion to quash the indictment, which was denied.  Soto filed a
second motion to quash, which was also denied.  In support of this issue, Soto
argues that although he was provided adequate time for discovery, he was not
placed on notice of the specific offenses he allegedly committed.  He further
alleges there was insufficient information regarding the specific offenses to
allow him to adequately prepare for trial.[6] 


A trial court’s decision denying
a motion to quash an indictment is reviewed de novo. Lawrence v. State,
240 S.W.3d 912, 915 (Tex. Crim. App. 2007).  Once a motion to quash is timely
filed, the indictment must be analyzed to determine whether it states on its
face the facts necessary to allege that an offense was committed, to bar a
subsequent prosecution for the same offense, and to give the accused notice of
the precise offense with which he is charged.”  DeVaughn v. State, 749
S.W.2d 62, 67 (Tex. Crim. App. 1988) (citing American Plant Food v. State,
508 S.W.2d 598, 603 (Tex. Crim. App. 1974)); Rotenberry v. State,
245 S.W.3d 583, 586 (Tex. App.—Fort Worth 2007, pet. ref’d).  This requirement
is codified in article 21.11 of the Texas Code of Criminal Procedure:

An indictment shall
be deemed sufficient which charges the commission of the
offense in ordinary and concise language in such a manner as to enable a person
of common understanding to know what is meant, and with that degree of
certainty that will give the defendant notice of the particular offense with
which he is charged, and enable the court, on conviction, to pronounce the
proper judgment.

 

Tex. Code
Crim. Pro. Ann. Art. § 21.11 (West 2009).  Additionally, article I, section
10 of the Texas Constitution requires that the notice provided to the accused
be clear from a reading of the indictment.  Tex.
Const. art. I, § 10; Livingston v. State, 739 S.W.2d 311, 321
(Tex. Crim. App. 1987); Moore v. State, 532 S.W.2d 333, 335 (Tex. Crim.
App. 1976).  

The
indictment must be viewed as a whole in order to determine if the offense is sufficiently charged in
the indictment.  DeVaughn, 49 S.W.2d at 67 (citing Dennis v. State,
647 S.W.2d 275, 279 (Tex. Crim. App. 1983); Church v. State, 552 S.W.2d
138, 140 (Tex. Crim. App. 1977)).  Additionally, the notice
offered by the indictment must be examined in a light
most favorable to the accused, keeping in mind his presumption of innocence
under the constitution.  DeVaughn, 749 S.W.2d at 68 (citing King v.
State, 594 S.W.2d 425, 426 (Tex. Crim. App. 1980)).

The indictment in this
case stated, in pertinent part:

Count
I

on or about the 15th Day of June,
2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and
knowingly cause the penetration of the ANUS of [C.L.], a child who was younger
than 14 years, by THE DEFENDANT’S SEXUAL ORGAN;

Count
II

on or about the 15th Day of June,
2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and
knowingly cause the SEXUAL ORGAN of [C.L.], a child who was younger than 14
years, to PENETRATE the MOUTH of THE DEFENDANT;

 

Count
III

on or about the 15th Day of June,
2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and
knowingly cause the penetration of the MOUTH of [C.L.], a child who was younger
than 14 years, by THE DEFENDANT’S SEXUAL ORGAN;

Count
IV

on or about the 15th Day of June,
2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and
knowingly cause the SEXUAL ORGAN of [C.L.], a child who was younger than 14
years, to PENETRATE the MOUTH of THE DEFENDANT;

Count
V

on or about the 15th Day of June,
2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and
knowingly cause the SEXUAL ORGAN of [C.L.], a child who was younger than 14
years, to PENETRATE the ANUS of THE DEFENDANT;

Count
VI

on or about the 15th Day of June,
2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and
knowingly cause the penetration of the ANUS of [C.L.], a child who was younger
than 14 years, by THE DEFENDANT’S SEXUAL ORGAN;

Count
VII

on or about the 15th Day of June,
2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and
knowingly cause the penetration of the ANUS of [C.L.], a child who was younger
than 14 years, by THE DEFENDANT’S SEXUAL ORGAN;

Count
VIII

on or about the 15th Day of June,
2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and
knowingly cause the penetration of the MOUTH of [C.L.], a child who was younger
than 14 years, by THE DEFENDANT’S SEXUAL ORGAN;

Count
IX

on or about the 15th Day of June,
2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and
knowingly cause the SEXUAL ORGAN of [C.L.], a child who was younger than 14
years, to PENETRATE the MOUTH of THE DEFENDANT;

Count
X

on or about the 15th Day of June,
2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and
knowingly cause the SEXUAL ORGAN of [C.L.], a child who was younger than 14
years, to PENETRATE the ANUS of THE DEFENDANT;

Count
XI

on or about the 5th Day of October,
2005, JOHN SOTO, hereinafter referred to as defendant, with the intent to
arouse or gratify the sexual desire of any person, expose PART OF HIS GENITALS,
knowing that [C.L.], A MALE CHILD YOUNGER THAN SEVENTEEN (17) YEARS, was
present;

 

Count
XII

on or about the 3rd Day of November,
2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and knowingly
engage in sexual contact with [C.L.], A MALE CHILD YOUNGER THAN SEVENTEEN (17)
YEARS by causing [C.L.] to touch PART OF THE GENTIALS of THE DEFENDANT with the
intent to arouse or gratify the sexual desire of any person;

Count
XIII

on or about the 3rd Day of November,
2005, JOHN SOTO, hereinafter referred to as defendant, did intentionally and
knowingly cause the penetration of the MOUTH of [C.L.], a child who was younger
than 14 years, by THE DEFENDANT’S SEXUAL ORGAN;

Count
XIV

on or about the 28th Day of January,
2006, JOHN SOTO, hereinafter referred to as defendant, did intentionally and
knowingly cause the SEXUAL ORGAN of [C.L.], a child who was younger than 14
years, to PENETRATE the MOUTH of THE DEFENDANT;

Count
XV

on or about the 28th Day of January,
2006, JOHN SOTO, hereinafter referred to as defendant, did intentionally and
knowingly engage in sexual contact with [C.L.], A AMLE CHILD YOUNGER THAN
SEVENTEEN (17) YEARS by touching PART OF THE GENTIALS of [C.L.] with the intent
to arouse or gratify the sexual desire of any person;

Count
XVI

on or about the 18th Day of March,
2006, JOHN SOTO, hereinafter referred to as defendant, did intentionally and
knowingly cause the penetration of the MOUTH of [C.L.], a child who was younger
than 14 years, by THE DEFENDANT’S SEXUAL ORGAN;

Count
XVII

on or about the 18th Day of March,
2006, JOHN SOTO, hereinafter referred to as defendant, did intentionally and
knowingly cause the penetration of the ANUS of [C.L.], a child who was younger
than 14 years, by THE DEFENDANT’S SEXUAL ORGAN;

Count
XVIII

on or about the 18th Day of March,
2006, JOHN SOTO, hereinafter referred to as defendant, did intentionally and
knowingly cause the SEXUAL ORGAN of [C.L.], a child who was younger than 14
years, to PENETRATE the ANUS of THE DEFENDANT;

Count
XIX

on or about the 18th Day of March,
2006, JOHN SOTO, hereinafter referred to as defendant, did intentionally and
knowingly engage in sexual contact with [C.L.], A MALE CHILD YOUNGER THAN
SEVENTEEN (17) YEARS by causing [C.L.] to touch PART OF THE GENTIALS of THE
DEFENDANT with the intent to arouse or gratify the sexual desire of any person;

 

It is clear from a reading of the indictment that
sufficient information is stated to enable Soto to prepare an adequate
defense.  See Tex. Const.
art. I, § 10; Tex. Code Crim. Pro. Ann.
Art. 
§ 21.11; DeVaughn, 49 S.W.2d at 67.  The indictment provides the
date of each alleged offense, the culpable mental state, the statutory elements
of each alleged offense, and describes who did what to whom.  This is
sufficient under the constitution, the code of criminal procedure, and
interpretive case law.  See id.  We therefore hold that the trial court
did not err in denying Soto’s motion to quash, and overrule this point of
error.  

Exclusion of Evidence

 

In his third and fourth
points of error, Soto contends the trial court abused its discretion by
limiting his ability to elicit testimony from C.L. in three areas: (1) a
juvenile felony theft case, which was taken into consideration as part of a
plea agreement in a juvenile burglary case; (2) a fight between C.L. and his
older brother; and (3) counseling C.L. received for inappropriately touching
another child, which occurred before the sexual assaults by Soto. 

We review a trial court’s
decision to admit or exclude evidence under an abuse of discretion standard.  Powell
v. State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).  The trial court does
not abuse its discretion if its ruling lies within the “zone of reasonable
disagreement,” and such a ruling must be upheld.  Id.  A ruling is
erroneous only if it “is so clearly wrong as to lie outside that zone within
which reasonable persons might disagree.”  McDonald v. State, 179 S.W.3d
571, 576 (Tex. Crim. App. 2005).

Juvenile Felony Theft

           On January 8, 2008, C.L. pleaded true,
in juvenile court, as a party to burglary of a habitation.  As part of a plea
agreement, three other pending cases were taken into consideration: (1)
possession of marijuana, zero to two ounces; (2) state jail felony theft; and
(3) unauthorized use of a motor vehicle.  

At a hearing outside the
presence of the jury, Soto’s counsel informed the court that he intended to
question C.L. about the felony theft and unauthorized use of a motor vehicle. 
Relevant to these issues, the following exchange took place: 

[Soto’s Counsel]: . . . [C]ertainly
the felony theft that was taken into consideration where [C.L.] would have to
say that it was true that he did those things in order to have it taken into
consideration, I’ve got that felony[.]

 

The Court: State.

 

[The State]: Our position is that,
given his juvenile status, that the defense counsel should not necessarily be
allowed to go into those matters[.]

 

The Court: Do you have any legal
authority for the admissibility of felonies that were taken into consideration
as distinguished from resulting in adjudication? 

 

[Soto’s Counsel]: . . . I do not have
a case on point.

 

The Court: Okay . . . I rule that the
burglary of a habitation and his status as a probationer in that case is admissible.

 

[The State]: Okay.

 

The Court: But none of the rest of it.

 

[Soto’s Counsel]: I understand.

 

The Court: If you find me a case that
causes me to reconsider, I’ll do it, but that’s my ruling right now.

 

[Soto’s Counsel]: I understand . . . and
did want the record to reflect that for these cases to have been dismissed, and
they were taken into consideration as simply being dismissed, the Respondent in
that case would have to admit that he, in fact, did commit the offenses that he
had been accused of committing.

 

[The State]: But – Okay.

 

The Court: That is true.  My ruling
remains the same unless you show me some authority. 

 

On appeal, Soto argues
evidence of C.L.’s juvenile felony theft was admissible under rule 404(a)(2) of
the Texas Rules of Evidence, which provides that evidence of a pertinent
character trait of a victim is admissible when offered by the accused.  Tex. R. Evid. 404(a)(2).  However,
nothing in the above-quoted exchange establishes Soto informed the court that
it was seeking admission of the evidence pursuant to rule 404(a)(2).  To
preserve an issue for appellate review, rule 33.1 of the Texas Rules of Appellate
Procedure requires the appellant to have made “a timely request, objection, or
motion that stated the ground for the ruling that the complaining party sought
from the trial court with sufficient specificity to make the trial court aware
of the complaint, unless the specific grounds were apparent from the
context[.]”  Tex. R. App. P.
33.1(a)(1)(A).  Soto’s objection was not made “with sufficient specificity to
make the trial court aware of the complaint” or to allow this court to
determine the grounds of the request.  See id.; Wilson v. State,
71 S.W.3d 346 (Tex. Crim. App. 2002) (stating preservation of error requires
complaining party to raise specific objection and acquire ruling on that
objection).  Soto’s appellate contention that C.L.’s felony theft was
admissible under rule 404(a)(2) was not presented to the trial court, nor was
it apparent from the record.  In fact, when the trial court specifically asked
Soto’s counsel for legal support favoring admissibility, counsel conceded he
had none.  Soto’s counsel asserted no legal basis for his request to admit
evidence of the felony theft.  Accordingly, we find that Soto waived this issue
for purposes of appeal.  

C.L.’s Counseling

At another hearing
outside the presence of the jury, Soto questioned C.L. about counseling C.L.
received before he met Soto, for “inappropriately touching another child.”  C.L.
admitted he had inappropriately touched a child, and saw a counselor as a
result.  Soto almost immediately changed his line of questioning to cover a fight
C.L. had with his brother.  In that fight, C.L. admitted to standing up to his
brother and defending himself.  At the conclusion of Soto’s questions to C.L.,
the following exchange occurred:

The Court: Okay. Tell me why you think
any of this is admissible.

 

[Soto’s Counsel]: I believe that the
second portion is admissible because it goes to the fact that the child knew
of, had the ability and had the propensity for physically defending himself
against any attackers.

 

The Court: That’s overruled.  What else?

 

[Soto’s Counsel]: I believe those are
all the issues that I have outside the presence.

 

Soto contends on appeal the
trial court erred when it excluded evidence of counseling C.L. received for
inappropriately touching another child.  However, Soto never presented an
argument for the admissibility of the inappropriate touching or counseling. 
Rather, counsel skipped over the subject entirely and argued only for the
admissibility of a fight C.L. had with his brother.  As stated above, to be
entitled to appellate review of a trial court’s ruling, a timely, specific
request that includes the grounds for the ruling sought must be made.  Tex. R. App. P. 33.1(a)(1)(A). 
Additionally, the complainant must show the trial court ruled on the request or
refused to rule, and the complainant objected to the refusal.  Id. R.
33.1(a)(2).  As the exchange between the trial court and Soto clearly
illustrates, Soto failed to present a theory regarding the admissibility of the
inappropriate touching and counseling evidence, and also failed to obtain a
ruling from the trial court with regard to that evidence.  Soto seemingly
abandoned his request to admit this evidence, arguing only for the admission of
the evidence of the fight between C.L. and his brother.  We therefore hold Soto
waived error regarding the admission of C.L.’s counseling for inappropriate
touching.  

Fight with Brother/Officer’s
Testimony

As
noted above, Soto sought to admit evidence of a fight in which ten or
eleven-year-old C.L. threw a knife with a six-inch blade, hitting his older brother
in the back of the head.  During the fight, C.L. threatened to kill his
brother.  Soto urged the trial court to admit this evidence, arguing it was “highly
relevant to both his tendency to fight when challenged, rather than to submit
without reporting it.”  In other words, by admission of the evidence Soto
sought to establish no sexual assault occurred, because if it had, C.L. would
have fought and reported it.  The trial court overruled Soto’s request to admit
evidence of the fight.  

After
the State rested, Soto sought admission of this evidence a second time.  This
time, however, Soto sought to introduce testimony from the reporting officer,
San Antonio Police Officer Mark Bjugstad, who was called to C.L.’s house during
this fight.  Officer Bjugstad was expected to testify to C.L.’s demeanor during
the fight, that C.L. admitted throwing the knife at his brother, and that C.L.
threatened his brother if his brother ever attacked him again.  The trial court
denied Soto’s request to admit this evidence.  On appeal, Soto argues the trial
court erred by denying him the opportunity to question C.L. about the fight
with his brother in the presence of the jury.  Soto also contends that pursuant
to rule 404(a)(2) of the Texas Rules of Evidence, the trial court erred in
excluding the testimony of Officer Bjugstad.  

Generally, character
evidence is inadmissible if offered by a party to prove an individual’s actions
on a particular occasion were in conformity with his character.  Tex. R. Evid. 404(a).  However, rule
404(a)(2) provides an exception, which permits admission of “evidence of a
pertinent character trait of the victim of the crime offered by an accused.”  Tex. R. Evid. 404(a)(2).  “A pertinent
trait is ‘one that relates to a trait involved in the offense charged or a
defense raised.’”  Stitt v. State, 102 S.W.3d 845, 849 (Tex.
App.—Texarkana 2003, pet. ref’d) (quoting Spector v. State, 746
S.W.2d 946, 950 (Tex. App.—Austin 1988, pet. ref’d)); see Black’s, Law Dictionary (8th ed. 2004)
(defining “pertinent” as pertaining to the issue at hand or relevant) (emphasis
added).  Soto contends C.L.’s fight with his brother is “highly relevant” and
should have been presented to the jury because it illustrates the victim’s
“tendency to fight when challenged.”  However, Soto fails to show how the
victim’s propensity to fight when challenged is a pertinent character trait
which has any relevance in a sexual assault of a child case.  See Vinson
v. State, 252 S.W.3d 336, 340 (Tex. Crim. App. 2008) (stating proponent of
evidence has burden of proving proffered evidence is admissible).  To be
relevant, the evidence in question must have a “tendency to make the existence
of any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence.”  Tex. R. Evid. 401.  Soto fails to show
C.L.’s alleged propensity to fight with a sibling is a fact of consequence,
which makes the sexual assault less likely to have occurred.  Thus, we hold the
trial court did not abuse its discretion in refusing to admit the evidence.  

We next address Soto’s
contention that the trial court erred in excluding the testimony of Officer
Bjugstad.  Soto argues Officer Bjugstad would have testified that during the
incident, C.L. used “extreme profanity towards his parents” and threatened to
kill his brother.  In essence, Soto believed the officer’s testimony would
illustrate C.L.’s “propensity to stand up to adults when challenged.”  In this
instance, Soto argues C.L. would have cursed at and physically threatened Soto had
Soto actually sexually assaulted C.L.  This argument fails for the same reasons
stated above.  C.L.’s propensity or ability to stand up to Soto during a sexual
assault is not a valid defense and has no relevance as to whether the act
occurred.  In fact, C.L. admitted attempting to thwart Soto’s sexual assaults,
but when he did Soto threatened C.L. and C.L.’s family.  

Although Soto contends
admissibility is governed by rule 404(a)(2), he in fact challenged the veracity
of C.L.’s accusations, stating “[the evidence] is certainly pertinent, in that
it [is] directly related to Soto’s defense that [C.L.] was not telling the
truth when he accused [] Soto.”  This appears to be an attempt to bypass rule
608(b), which precludes the use of “[s]pecific instances of the conduct of a
witness, for the purpose of attacking or supporting the witness’ credibility .
. . on cross-examination of the witness . . . .”  Tex. R. Evid. 608(b).  Soto’s attempt to attack C.L.’s
character for truthfulness using Officer Bjugstad’s testimony is an
impermissible attempt to cast an unfavorable light on the victim.  Officer
Bjugstad does not have a basis of fact to testify as to C.L.’s character for
truthfulness; instead his testimony referencing this specific instance of
conduct, at most, would establish C.L. exhibited violent characteristics.  

Even assuming it was
error to exclude the evidence of the fight and Officer Bjugstad’s testimony
relating to it, we hold such error was harmless.  See Tex. R. App. P. 44.2(b).  Soto argued
admissibility based on the rules of evidence, i.e., non-constitutional error,
and therefore reversal is necessary only if the error affected Soto’s
substantial rights.  We hold the error did not affect Soto’s substantial
rights, and was therefore harmless.  

Sixth
Amendment

           In addition to the errors asserted above,
Soto makes a vague allegation that he was denied his Sixth Amendment right to
confront the witness against him because his cross-examination of C.L. was
limited in the three areas discussed above.  However, at trial, Soto did not
raise a Sixth Amendment or confrontation clause objection.  Constitutional
errors, such as the Sixth Amendment claim asserted here by Soto, are waived if
not raised at trial.  See Wright v. State, 28 S.W.3d 526, 536
(Tex. Crim. App. 2000) (holding Sixth Amendment claim waived by failing to
object on that basis at trial), superseded by statute on other grounds by Tex. Code Crim. Proc. Ann. art. 37.071 (West Supp. 2010). 
Accordingly, we hold any complaint based on the Sixth Amendment was waived.  

Admission
of Evidence

Soto’s fifth
point of error concerns the testimony of the State’s medical expert, Dr. Nancy
Kellogg.  Dr. Kellogg was called to the stand to interpret the results of C.L.’s
sexual assault examination, which was conducted by Dr. Jim Anderst.[7]  On appeal, Soto argues Dr. Kellogg’s
testimony regarding the “diagnostic impression” section of Dr. Anderst’s report
and her explanation of the significance of a normal examination were “unnecessary
and inadmissible” because her testimony did not tell the jury “anything that it
could not have deduced on its own,” and that the testimony was “a comment on
the truthfulness of [C.L.].”  

As stated
previously, we review the trial court’s evidentiary rulings under an abuse of
discretion standard.  Powell, 63 S.W.3d at 438.  At trial, Soto, relying
on Salinas v. State, 166 S.W.3d 368 (Tex. App.—Fort Worth 2005, pet. ref’d),
objected only to Dr. Kellogg “drawing any conclusions” from the victim’s normal
examination and medical history.  Thus, Soto’s complaint on appeal does not
comport with the objection raised at trial.  

A defendant’s
appellate complaint must comport with his trial objection or the defendant has
waived appellate review.  Ibarra v. State, 11 S.W.3d 189, 197 (Tex.
Crim. App. 1999); Turner v. State, 805 S.W.2d 423, 431 (Tex. Crim. App.
1991); see also Edwards v. State, 97 S.W.3d 279, 287 (Tex. App.—Houston
[14th Dist.] 2003, pet. ref’d) (holding that “[a]n objection stating one legal
basis may not be used to support a different legal theory on appeal.”).  Soto’s
claim on appeal that Dr. Kellogg’s testimony spoke to the truthfulness of C.L.’s
testimony and was unnecessary because the jury could draw its own inferences
and conclusions without her testimony does not comport with his trial
objection.  See Salinas, 166 S.W.3d at 371.  Accordingly, we hold
Soto has waived any error.

Rule 614
Violation

In his final
point of error, Soto argues the testimony of C.L.’s mother, Gabrielle Knight,
should have been struck from the record after it was discovered that she violated
rule 614 of the Texas Rules of Evidence.  Rule 614 states that, “[a]t the
request of a party the court shall order witnesses excluded so that they cannot
hear the testimony of other witnesses.”  Tex.
R. Evid. 614.  Rule 614 is commonly referred to as “the Rule.”  The
purpose of “the Rule” is to prevent witnesses from changing their testimony based
on the testimony of another.  Webb v. State, 766 S.W.2d 236, 239 (Tex.
Crim. App. 1989).  Additionally, it improves the jury’s ability to decipher false
testimony by revealing inconsistencies in witnesses’ testimony.  White v.
State, 958 S.W.2d 460, 462 (Tex. App.—Waco 1997, no pet.).  

Before
opening statements, the State invoked “the Rule,” and the trial court
instructed the witnesses they could speak about the case only with their
attorneys.  Immediately after testifying, C.L.’s mother was observed in the
hallway by a criminal defense attorney, who was not involved in the case, in
what he believed to be a discussion of her testimony with C.L.  This attorney
proceeded to the courtroom intending to inform the State about what he had
witnessed.  Unable to make contact with the State’s attorneys, the attorney
reported his observation to Soto’s attorney via a handwritten note.  At the
first opportunity, Soto raised the issue with the trial court.  The court held
a hearing with C.L. and his mother to determine if either witness had violated “the
Rule.”  

At the
hearing, the attorney testified he heard about thirty seconds of a conversation
between C.L. and his mother.  He stated he overheard C.L. asking Knight what
she had testified about, and responded with something about “the guy got thrown
out of the house or something.”  He further stated it sounded as though the two
were “talking about something about the wife, it sounded like the defendant,
that he had left the house.”  Knight denied discussing her testimony with her
son.  The trial court determined no serious harm had occurred and advised the
State to remind its witnesses of “the Rule.” 

Later, Soto objected
when Knight was called to testify, alleging the previously asserted violation
of rule 614.  The objection was again overruled.  Subsequently, in his motion
for new trial, Soto again argued Knight’s testimony should have been struck,
and the failure to strike resulted in an unfair trial.  The motion for new
trial was denied. 

It is within
the trial court’s discretion to allow the testimony of a witness who has
violated rule 614.  Bell v. State, 938 S.W.2d 35, 50 (Tex. Crim. App.
1996).  On appeal, we presume the trial court acted within its power unless an
abuse of discretion is shown.  Id.  In reviewing a trial court’s
decision to allow testimony after an alleged violation of “the Rule,” the reviewing
court looks at whether the defendant was “harmed or prejudiced by the witness’s
violation,” i.e., was there injury to the defendant.  Id.  The court of
criminal appeals has suggested two criteria for determining injury or
prejudice: (1) whether the witness actually conferred with or heard testimony
of other witnesses, and (2) whether the witness’s testimony contradicted
testimony of a witness from the opposing side or corroborated testimony of a
witness she had conferred with or heard.  Id. (citing Webb v. State, 766 S.W.2d 236, 240 (Tex. Crim. App.
1989)).  

The testimony
of the attorney who allegedly overheard Knight speaking with her son conflicted
with Knight’s testimony.  Thus, the trial court’s determination of whether
there was, in fact, a violation of “the Rule,” turned on the credibility of the
witnesses.  See Manzi v. State, 88 S.W.3d 240, 254 (Tex. Crim. App.
2002) (noting reviewing courts defer to trial court’s factual determination
because trial court is “‘Johnny-on-the-spot,’ personally able to see and hear
the witnesses testify[,]” and make determinations based on demeanor, tone of
voice, hesitancy of speech, shoulder shrugs, jaw tightening, or clenched
fists).  Because the evidence was conflicting, it is unclear if an actual
violation occurred, and the trial court could have determined there was, in
fact, no violation.  Accordingly, the trial court was within its discretion to
admit Knight’s testimony, believing she had not violated rule 614.  

Soto argues Knight’s
testimony at the sentencing phase of the trial, wherein she discussed moving
from her family’s residence of ten years, corroborated C.L.’s testimony during
the guilt phase of the trial.  During her testimony, Knight was asked to
explain the motivation and circumstances surrounding her family’s move across
town after Knight went to police about Soto.  C.L. had previously testified
about the move.  We hold that although Knight’s testimony about the move was
the same as C.L.’s, this is insufficient to establish they conferred about that
testimony so as to establish corroboration.  The defense attorney did not
testify he heard anything about the family moving; rather, he heard a
discussion about someone being thrown out of a house.  On this basis, we cannot
say Soto was injured by the trial court’s decision to allow Knight to testify;
there was no abuse of discretion.

Soto also
contends Knight’s testimony opposing Soto’s probation contradicted testimony by
Soto’s wife and father.  In her testimony, Knight described C.L.’s fear that he
would be sexually assaulted or physically harmed by Soto.  Soto’s wife and
father attested to Soto’s willingness to follow the rules and their desire to
have Soto’s help with his ailing mother.  We see no contradiction; rather we
see divergent opinions upon whether Soto should be given probation.  Moreover,
there was nothing in the defense attorney’s testimony to suggest a discussion
between Knight and C.L. about this issue.  

In sum, it was
within the discretion of the trial court to allow Knight to testify during the
punishment phase of the trial.  See Bell, 938 S.W.2d at 50. 
Because the trial court could have found no violation of “the Rule,” or that
any violation failed to injure Soto, we hold there was no abuse of discretion
and overrule Soto’s final point of error.

Conclusion

We overrule
Soto’s issues, and affirm the trial court’s judgment.  

 

Marialyn Barnard, Justice

 

Do Not Publish









[1]The Honorable Pat Priest was
sitting by assignment.  





[2]According to Soto, “Paul” was a
friend of his who sent the message to C.L. as a joke.





[3]According to C.L., Soto
instructed C.L. to tell his mother that the phone was a gift from his
girlfriend “Sue.”





[4]According to Detective Miller’s
testimony, text messages are recorded by Sprint, the carrier in this case, as
one minute phone calls. 





[5]Soto was first indicted on April
17, 2007, on nine counts of aggravated sexual assault of a child, which allegedly
occurred between November 3, 2005 and March 18, 2006.  However, after authorities
interviewed C.L., they discovered the alleged offenses occurred nine months
earlier than previously thought.  Accordingly, the State dismissed the first
indictment and later re-indicted Soto to accurately reflect the timeline of the
alleged offenses.  





[6]The State contends Soto waived
his right to complain about denial of his motion to quash.  However, we hold Soto
preserved his complaint by filing two motions to quash, both of which were
filed before trial began.  See Tex.
Code Crim. Pro. Ann. Art. § 1.14 (b) (West 2005) (stating defendant
waives right to object to defect, error, or irregularity in indictment only if
he fails to object before the date upon which trial commences). 





[7]Dr. Anderst was unavailable to
testify at trial.